NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000220
19-MAY-2022
07:53 AM
Dkt. 151 MO

NO. CAAP-21-0000220

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MICHAEL G. JONES and JENNIFER O. JOHNSTON-JONES, as Trustees of the Michael G. Jones and Jennifer O. Johnston-Jones Family Trust Dated March 15, 2007, PlaintiffS/Counterclaim Defendants-Appellees,
v.
COLLEEN O'SHEA BRADY, Defendant/Counterclaimant/Third-Party Plaintiff-Appellant,
v.
MICHAEL G. JONES and JENNIFER O. JOHNSTON-JONES, individually, Third-Party Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(Case No. 2CC171000212)


**MEMORANDUM OPINION**
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Defendant/Counterclaimant/Third-Party Plaintiff-Appellant Colleen O'Shea **Brady** appeals from the **(1)** "Findings of Fact, Conclusions of Law and Order Granting Plaintiffs' Motion to Enforce Settlement Agreement" (**Order Granting Motion to Enforce**) entered by the Circuit Court of the Second Circuit on March 18, 2021;[1] and **(2)** "Order Denying Defendant/Counterclaimant Colleen O'Shea Brady's Motion for Reconsideration of the Court's Oral Order (Written Order Not Yet Filed) Granting Plaintiffs' Motion for Enforcement of Settlement Agreement" (**Order Denying**

---

[1]    The Honorable Rhonda I.L. Loo presided.

**Reconsideration**) entered by the circuit court on June 10, 2021.[2]
For the reasons explained below, we affirm the Order Granting
Motion to Enforce and the Order Denying Reconsideration.

## BACKGROUND

The action below began on May 22, 2017, when
Plaintiffs/Counterclaim Defendants-Appellees Michael G. Jones and
Jennifer O. Johnston-Jones, as Trustees of the Michael G. Jones
and Jennifer O. Johnston-Jones Family Trust Dated March 15, 2007
(collectively, **Trustees**) filed a complaint against Brady.  The
complaint alleged that Trustees owned a 99% undivided interest,
and Brady owned a 1% undivided interest, in real property located
in Haʻikū, Maui (the **Property**).  The complaint sought partition
of the Property under Hawaii Revised Statutes (**HRS**) Chapter 668.
An amended complaint was filed on April 16, 2018, which added
claims for breach of contract, unjust enrichment, and promissory
estoppel.

Brady answered the amended complaint on April 23, 2018,
demanded a jury trial, and asserted a counterclaim against
Trustees and a third-party complaint against Michael G. Jones and
Jennifer O. Johnston-Jones individually.

On January 29, 2021, after more than three years of
litigation, Trustees filed a **"Motion to Enforce** Settlement
Agreement."  The motion was heard on February 18, 2021.  The
circuit court orally granted the motion.  On February 22, 2021,
Brady moved for reconsideration of the circuit court's oral
order.

The circuit court entered the Order Granting Motion to
Enforce on March 18, 2021.  The order stated:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that
> Plaintiffs' Motion is GRANTED as follow[s]:
>
> 1.    The Court finds that there is no genuine issue
> of material fact that Brady is in breach of the Settlement
> Agreement and further finds that Brady has not refuted that

---

[2]    The Honorable Blaine J. Kobayashi signed the order.

she breached the Settlement Agreement by not sending out the documents required under its terms.

 2. Brady is ordered to execute and mail the Quitclaim Deed that was attached as Exhibit "A" to the Settlement Agreement to Fidelity National Title & Escrow of Hawaii . . . as required under Section I.A.5. of the Settlement Agreement within two business days after entry of this Order.

 3. Brady is ordered to execute and mail the stipulation for dismissal that was attached as Exhibit "B" to the Settlement Agreement to Plaintiffs' counsel . . . within two business days after entry of this Order.

 4. Brady is ordered to execute and mail tax form P-64A to Plaintiffs' counsel . . . within two business days after entry of this Order.

 5. Brady is also ordered to execute any and all documents as may be required by the Bureau of Conveyances or Escrow to effectuate the terms of the Settlement Agreement.

The circuit court entered the Order Denying Reconsideration on June 10, 2021. This appeal followed.[3]

### STANDARD OF REVIEW

Summary judgment standards apply to a motion to enforce a settlement agreement. Moran v. Guerreiro, 97 Hawaiʻi 354, 371, 37 P.3d 603, 620 (App. 2001). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 342, 418 P.3d 1187, 1198 (2018). A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. Id. Once a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must "demonstrate specific facts, as

---

 [3] "[A]n order enforcing a settlement agreement is a collateral order which is appealable." Cook v. Sur. Life Ins., Co., 79 Hawaiʻi 403, 408, 903 P.2d 708, 713 (App. 1995).

opposed to general allegations, that present a genuine issue worthy of trial."  Id. (citations omitted).  The evidence must be viewed in the light most favorable to the non-moving party.  Id.

"[T]he construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court."  Balogh v. Balogh, 134 Hawai'i 29, 37, 332 P.3d 631, 639 (2014).

## POINTS ON APPEAL

Brady raises three points on appeal:

"A.  The Circuit Court unreasonably denied Ms. Brady's right to Counsel";

"B.  [Trustees] negated the purported January 18, 2021 settlement agreement"; and

"C.  The trial Court erred by not conducting an evidentiary hearing."

## DISCUSSION

### A.  Brady was not denied a right to counsel.

Brady was represented by counsel when she answered Trustees' original complaint and asserted a counterclaim on June 26, 2017.  Withdrawals and substitutions of her counsel were filed on September 7, 2017, and March 12, 2018.  On September 6, 2018, Brady's then-counsel moved to withdraw.  On November 2, 2018, the circuit court entered an order granting the motion to withdraw.

On November 13, 2018, Brady's new counsel filed a notice of appearance.  On April 11, 2019, another withdrawal and substitution of counsel was filed.  On June 25, 2019, Brady's then-counsel moved to withdraw.  On August 7, 2019, the circuit court entered an order granting the motion to withdraw.

On July 30, 2019, lawyer John F. **Parker** filed a document as attorney for Brady.  Parker did not file a notice of appearance, but thereafter signed and filed 26 documents as

attorney for Brady.  On October 24, 2019, Parker filed a motion to withdraw, stating that "[a]n irreconcilable difference exists" between him and Brady, and that "[e]ffective representation is materially impaired[.]"[4]  The record does not contain an order on Parker's motion to withdraw.  However, Brady began filing documents as a self-represented party on November 15, 2019, and thereafter filed over 20 documents on her own behalf.

Trustees' Motion to Enforce was filed on January 29, 2021.  A self-represented Brady filed a response on January 31, 2021.  Trustees filed a reply memorandum on February 11, 2021.  A self-represented Brady filed a second response on February 11, 2021.

Trustees' Motion to Enforce was heard on February 18, 2021, via Webex.  Trustees' counsel and Brady appeared remotely. Parker appeared in person at the hearing.  The following exchange took place while the parties were entering their appearances:

> THE COURT: . . . And, Mr. Parker, are you making an appearance in this case?
>
> MR. PARKER: Your Honor, John Parker. I'm here for the pro se defendant, Ms. Brady, should she need legal advice or should I be able to help in any way, but I'm not appearing as counsel of record.
>
> THE COURT: So you're no longer her counsel?
>
> MR. PARKER: I am not counsel of record. I am her -- I call it ad hoc counsel for advice, as is allowed by the Rules of Professional Conduct. A pro se defendant can be advised by a licensed attorney.
>
> THE COURT: The problem is, if you're going to give her advice, it's over -- it's in open court.
>
> MR. PARKER: Well --
>
> THE COURT: That's why you can't give her any advice --
>
> MR. PARKER: I think it's a gray area, and I'll try to stay out of it. If it arises where Ms. Brady wants to ask a question, perhaps I can do so on the phone or text.
>
> . . . .

---

[4]      Parker signed Brady's amended opening brief and reply brief as, respectively "appellate attorney for Colleen O'Shea Brady" and "attorney for Defendant-Appellant Colleen O'Shea Brady[.]"

> THE COURT: . . . And, Ms. Brady, can you unmute yourself, please.
>
> MS. BRADY: Colleen Brady.
>
> THE COURT: Okay. Thank you very much.
>
> MS. BRADY: Good morning, your Honor.
>
> THE COURT: Good morning.
>
> Go ahead, [counsel for Trustees].

Trustees' counsel presented Trustees' argument. Brady then responded on her own behalf. Trustees' counsel replied. Brady again responded on her own behalf, and answered the circuit court's questions. After Trustees' counsel addressed the circuit court, Brady asked to be heard again, and presented additional arguments. The circuit court announced its decision and explained its ruling. The following exchange then took place:

> THE COURT: Thank you.
>
> Yes, Ms. Brady?
>
> MS. BRADY: Can this be appealed, your Honor?
>
> THE COURT: You can -- we're done for today, Ms. Brady. Thank you.

The record contains no indication that the circuit court ordered Parker to leave the courtroom or barred him from participating in the hearing. The record contains no request by Brady that Parker be allowed to address the circuit court on her behalf. The record contains no request by Brady for a recess to confer off the record with Parker. The circuit court does not abuse its discretion by not responding to a request that was never made. Brady's contention that the Circuit Court unreasonably denied her a right to counsel is without merit.

## B. The circuit court did not err by granting Trustee's Motion to Enforce.

Trustees' Motion to Enforce was supported by the declaration of Jennifer O. Johnston-Jones and a number of exhibits. The declaration stated:

6

> 3. On January 18, 2021, [Trustees] entered into a Settlement and Release Agreement ("Settlement Agreement") with Defendant Colleen O'Shea Brady ("Brady"). A true and correct copy of the Settlement Agreement is attached as Exhibit "1".

Exhibit 1 to the declaration was a document titled **"Settlement and Release Agreement."** The document was hand-dated January 18, 2021, and bore what appeared to be the signature of Brady, and the signatures of the Joneses. Brady's initials also appear on the bottom right corner of each of the first seven pages of the eight-page document.[5] Other exhibits to Johnston-Jones's declaration included various exhibits to the Settlement and Release Agreement, including a deed, a conveyance tax certificate, an unfiled stipulation for dismissal with prejudice of all claims and parties, and a number of emails between the parties and their respective counsel.

In response to the Motion to Enforce, Brady did not submit a declaration denying that she signed and initialed the Settlement and Release Agreement. She did not submit any documentary evidence.

Trustees satisfied their initial burden of producing support for their claim that the parties had executed the Settlement and Release Agreement. The burden then shifted to Brady to "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Nozawa, 142 Hawaiʻi at 342, 418 P.3d at 1198 (citations omitted). Brady did not submit a declaration or any documentary evidence to attempt to create a genuine issue of material fact. Instead, she argued that a handwritten notation on the Settlement and Release Agreement established that there had been no meeting of the minds, and thus no agreement. She argued: "Although agreed upon Settlement terms were only a few words apart, there was still minor tuning up of a final, signed agreement that represented a 'Meeting of the Minds' which could be sent to escrow." Brady

---

[5] Page 8 was the counterpart signature page.

pointed to the paragraph in the Settlement and Release Agreement that required her to "deliver the quitclaim deed, stipulation for dismissal and Form P-64A by overnight carrier to [Trustees'] counsel[.]" Next to the paragraph appeared, in handwriting, the statement: "***Quitclaim Deed*** to go to escrow" (emphasis added). Next to the handwriting were Brady's initials.

Brady later took the position that she "changed and initialed it saying [all] documents will go to escrow." She was corrected by Parker, who sent the following email addressed to Brady, Trustees, and Trustees' counsel:

> Colleen:
>
> As your *ad hoc* attorney I advise you that ***signing the Dismissal and the P-64A forms and mailing them (regular mail should be fine) to [Trustees' counsel] will not compromise your position and is a necessary step. The QC deed should be signed and mailed directly to escrow as soon as possible.*** (If you want to you can send a courtesy copy marked as a copy to [Trustees' counsel].) It is my understanding that the QC deed will be given to the Joneses at the same time the $25K will be released to you. After receiving the QC deed the Joneses are responsible in their own interest to record the QC deed, but whenever they decide to record the QC deed the payment to you from escrow of $25K is not in any way tied to the date the Joneses decide to record the QC deed they will receive upon the close of escrow.

(bold italics added). Parker's email was attached as Exhibit 11 to Trustees' Motion to Enforce. Brady did not object to any of the declarations or exhibits to the motion. The essential elements of a contract are: (1) capacity to enter the contract, (2) offer, (3) acceptance, and (4) consideration. <u>Calipjo v. Purdy</u>, 144 Hawai'i 266, 280, 439 P.3d 218, 232 (2019). The signed Settlement and Release Agreement evidenced all of these elements.

Even if Brady's obligation to tender the quitclaim deed to escrow rather than to Trustees' counsel was unclear, "[a] settlement agreement is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose." <u>Assocs. Fin. Servs. Co. of Hawai'i v. Mijo</u>, 87 Hawai'i 19, 32, 950 P.2d 1219, 1232 (1998). We conclude, viewing the evidence in the light most

favorable to Brady, that Brady failed to establish that there was a genuine issue of material fact. The circuit court did not err by ruling that the Settlement and Release Agreement, signed by all parties, was a valid and binding contract.

Brady argues that after the March 18, 2021 Order Granting Motion to Enforce was entered, Trustees made a "written offer of settlement which calls into genuine dispute the viability of any prior settlement offer(s) that [Trustees] made." There are a number of problems with that argument. Brady fails to cite where in the record the alleged "written offer of settlement" is to be found. We are not obligated to search the record for information that should have been provided by Brady. Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawai'i 438, 480, 164 P.3d 696, 738 (2007) (first citing Lanai Co. v. Land Use Comm'n, 105 Hawai'i 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004) (explaining that an appellate court "is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions"); and then citing Miyamoto v. Lum, 104 Hawai'i 1, 11 n.14, 84 P.3d 509, 519 n.14 (2004)).

Second, although "[b]asic contract law states that a counter-offer effectively serves as a rejection of the original offer[,]" Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 497, 100 P.3d 60, 67 (2004) (citations omitted), the offer-and-acceptance process was concluded when the parties signed the Settlement and Release Agreement, which we affirm was a valid and enforceable contract. Brady cites no authority for the proposition that a valid and enforceable contract is voided by one party's attempts to persuade the other party to comply, and we find none.

Third:

> Where the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on the grounds that would justify rescission. Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.

Mijo, 87 Hawaiʻi at 28-29, 950 P.2d at 1228-29.  Brady cites to no evidence to support rescission of the Settlement and Release Agreement, and we find none.

### C.    The circuit court was not required to conduct an evidentiary hearing.

Summary judgment standards apply to a motion to enforce a settlement agreement.  Moran, 97 Hawaiʻi at 371, 37 P.3d at 620.  Once the movant satisfies its burden to show that there is no genuine issue of material fact and it is entitled to judgment as a matter of law, the burden shifts to the party opposing the motion to "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Nozawa, 142 Hawaiʻi at 342, 418 P.3d at 1198 (citations omitted). Once that is done, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or [depositions, answers to interrogatories, or admission on file,] must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Rule 56(e) of the Hawaiʻi Rules of Civil Procedure.  Brady cites to no authority requiring an evidentiary hearing on a motion for summary judgment.  A fact-finding evidentiary hearing is antithetical to the summary judgment procedure.  Brady's argument that the circuit court was required to conduct an evidentiary hearing is without merit.

Brady raises no points and makes no arguments directed at the Order Denying Reconsideration.  They are waived.  See Rule 28(b)(4) of the Hawaiʻi Rules of Appellate Procedure ("Points not presented in accordance with this section will be disregarded[.]") and (7) ("Points not argued may be deemed waived.").

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

## CONCLUSION

For the foregoing reasons, the Order Granting Motion to Enforce entered by the circuit court on March 18, 2021, and the Order Denying Reconsideration entered by the circuit court on June 10, 2021, are affirmed.

DATED:  Honolulu, Hawaiʻi, May 19, 2022.

On the briefs:

John F. Parker,
for Defendant/
Counterclaimant/Third-Party
Plaintiff-Appellant Colleen
O'Shea Brady.

Sunny S. Lee,
Kelly A. Higa Brown,
for Plaintiffs/Counterclaim
Defendants-Appellees Michael
G. Jones and Jennifer O.
Johnston-Jones, as Trustees of
the Michael D. Jones and
Jennifer O. Johnston-Jones
Family Trust Dated March 15,
2007, and Third-Party
Defendants-Appellees Michael
G. Jones and Jennifer O.
Johnston-Jones, individually.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge